38 So.2d 274

**SECURITY LIFE & ACCIDENT INS. CO.
et al. v. CARLOVITZ et al.**

**I Div. 332.**

Supreme Court of Alabama.

Jan. 13, 1949.

Howell & Johnston and Caffey, Galla-
lee & Caffey, all of Mobile, for appellants.

Outlaw, Seale & Kilborn, of Mobile, for appellees.

BROWN, Justice.

The bill in this case was filed by Carlovitz, Taylor and Congleton as minority stockholders against Security Life and Accident Insurance Company, a corporation organized under the statutes of this state in April, 1946, Title 28, § 245 et seq., Code of 1940, seeking injunctive relief, the appointment of a receiver and final dissolution of the corporation and the distribution of its assets. All the stockholders other than the complainants are made parties defendant with the corporation.

It appears from the allegations of the bill and the proof that the incorporators, fourteen in number, all of whom were experienced insurance salesmen, except three who were experienced business men in other fields of endeavor, organized the corporation in pursuance of a dream of security and continuous employment, each and all taking stock. The total capital stock of the corporation amounts to $25,-.000, represented by 2,000 shares at the par value of $12.50 per share, all of which was subscribed and paid in. Although the dream was freely discussed during the organization of the corporation, it was not crystalized into a binding obligation on the part of the corporation or the several stockholders. The complainants Carlovitz and Taylor each own and hold 250 shares of the capital stock and the complainant Congleton owns 125 shares, aggregating 625 shares. At the beginning of the business of such corporation, it seems the management undertook to carry into effect the dream of the organizers, giving employment to the insurance salesmen in the field of their experience and to the others in the business features of the corporation. After a time internal strife developed, resulting in the creation of two factions, each seeking to obtain control of the corporation and finally the majority named as defendants obtained control of the corporation, elected their officers including a general manager, and conferred on him the power to discharge employees and in pursuance of that power the complainants were discharged and denied employment.

After their discharge the complainants gave written notice to the corporation and through it to the other stockholders of their desire to sell their stock, inviting bids therefor from any of the other stockholders who desired to purchase within a week after such notice was given. This notice and invitation to purchase said stock was referred by the secretary of the corporation to the general counsel who advised each of the complainants that their offer to sell did not meet the requirements of the provisions of the following by-law of the corporation regulating the transfer of stock and suggested that they amend their application to sell strictly in compliance with the provisions of such by-law. The by-law reads:—

"Article III Section 2. Transfer of stock shall be made either in person or by attorney only on the books of the corporation in a transfer book kept for that purpose, and upon the surrender of the old certificates. Written notice shall first be given to the Secretary of the Corporation requesting the tranfer of stock, which notice shall contain the name and address of the stockholder, number of shares to be transferred, and name and address of the proposed transferee. No stock shall be so trans-

ferred until the expiration of sixty (60) days from the date that said written application has been received by the Secretary of the corporation. It shall be the duty of the Secretary of the corporation within five (5) days from the receipt of such notice, to mail written notice of same to each stockholder of the corporation, which notice shall include all of the information contained in said Application. It shall then be the privilege of each stockholder to have an opportunity to purchase the stock thus sought to be sold and transferred, and to signify his desire to so purchase, he shall give written notice to the Secretary on or before forty-five (45) days from the date on which the application for transfer is received by the Secretary. Should any stockholder so notify the Secretary within said forty-five (45) days period, such stock cannot be transferred to the stockholder so signifying his desire to purchase. The purchase price, in the absence of an agreement to the contrary shall be the book value of said stock as determined by the last audit of the books of the corporation. Should more than one of the stockholders of the corporation desire to purchase the stock so sought to be transferred, then the said stock shall be divided equally between them on a per capita basis."

In the notice and offer of complainants inviting the other stockholders to bid and giving them a week's option to do so, it was asserted that complainants had been given legal advice that the said bylaw was unenforceable. Said notice was given on January 28, 1948, and the bill was filed on the 1st of March, 1948. The trial was before the court on evidence given ore tenus and at the conclusion of the trial the bill was amended eliminating all features thereof except insofar as it sought a declaratory judgment as to the validity of said bylaw and its effect as a restriction on the sale of stock by individual stockholders. On submission for final decree on pleading and proof the trial court entered a decree declaring said bylaw invalid except insofar as it required the transfer to be entered on the books of the corporation by the owner or his attorney in fact. The appeal in this case is prosecuted from that decree.

Able counsel for appellant, who seem to have made a thorough study of the question, concedes in brief: "It is only when a bylaw unreasonably restricts the right to transfer stock, or when the making of such a bylaw is unauthorized, or is against public policy as prohibited by statute expressly or impliedly that it is held invalid as a bylaw. If the restriction is reasonable such bylaw is entirely valid." Appellants insist that a "restriction of the sort here involved is reasonable and is highly proper to insure the continued operation of the corporate business by a qualified and friendly personnel."

Our interpretation of said bylaw is that it confers on two or more stockholders the power, by withholding their consent, to force a stockholder who desires to sell his stock to sell at book value, regardless of the reasonable market value thereof. The crux of the bylaw is: "Should any stockholder so notify the Secretary within said forty-five (45) days period, such stock *can not* be transferred to the stockholder so signifying his desire to purchase. The purchase price, *in the absence of an agreement* to the contrary shall be the book value of said stock as determined by the last audit of the books of the corporation. Should more than one of the stockholders of the corporation desire to purchase the *stock so sought to be transferred, then the* said stock shall be divided equally between them on a per capita basis." [Italics supplied.]

A refusal of any two or more of said stockholders to agree on a reasonable price would compel the offering stockholder to accept the "book value". This limits the field to those who can purchase on that basis and then no sale could be effected unless such other stockholders consented to purchase at that value.

Section 62, Title 10, Code of 1940, provides inter alia: " * * * there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless * * * the restriction is stated upon the certificate."

Christy and McLean in their recent work on "The Transfer of Stock", Second Edition, § 22, recognize that the legislature

may prescribe how such restrictions shall be evidenced and at the conclusion of said section it is stated: "The Uniform Stock Transfer Act provides that there shall be no lien upon the shares represented by the certificates and no *restriction* on the transfer of shares so represented unless the right of the corporation to such lien or the *restriction* is stated on the certificate." [Italics supplied.] This statement appears on page 46 of said work and in said last cited authority it is stated generally in § 36 thereof: "A stockholder has an inherent right to transfer his stock just as he has an inherent right to transfer any other property he may own. One of the incidents of the ownership of property is the power to dispose of it at pleasure. Hence, 'the courts have jealously guarded facilities for the transfer of title, and all unreasonable attempts to restrain the right to pass title have been declared void as against public policy.' 'Stock in a corporation held by an individual is his own private property, which he may sell or dispose of as he sees proper, and over which neither the corporation nor its officers have any control. It is the subject of daily commerce and is bought and sold in the market like any other marketable commodity. The directors have no control or dominion over it whatever or duty to discharge in reference to its sale and transfer, unless it be to see that proper books and facilities are furnished for that purpose. As the property of the individual holder, he holds it as free from the dominion and control of the directors, as he does his lands or other property.' * * *." This text is founded on Howe v. Roberts, 209 Ala. 80, 81, 95 So. 344, and other authorities cited to the same effect.

In Section 37 of the same work it is said: "Any unreasonable restriction on the right to transfer stock is void as being a restraint on alienation and contrary to public policy. 'The transfer of stock has been uniformly regarded as a legitimate subject of corporate legislation, to enable the company to know who are stockholders, to whom dividends are to be paid, who are entitled to vote, and, where the company has a lien on the stock for debts due to it from the stockholders, to enable it to prevent a transfer in derogation of its own rights. But such legislation will not be enforced beyond what is necessary to serve those purposes, where its enforcemnt would operate as an infringement on the property rights of others, or as an unreasonable restraint upon the disposition of property in the stock of the corporation.' 'Where shares are unqualified, full-fledged, so to speak, restraints upon their transfer, whether by charter or by-law except for convenience of corporation regulations, are in contravention of public policy and void. The authorities are unanimous in enunciating this principle.' Any restriction on the right of a stockholder to transfer his shares must be construed strictly.

"It is not every restriction on the transfer of stock that is invalid. As we shall see, the validity may depend on the kind of restriction, and on whether it appears in the charter or in the by-laws. 'A distinction must be observed between an agreement absolutely restrictive of sale or transfer and one merely imposing conditions, such as first giving a refusal to the other stockholders, and also between those conditions, when created by contract between the shareholders and authorized by the articles and when attempted to be imposed by a by-law upon an unwilling minority or upon those who may assert that the by-law is beyond the charter power.'

"It is provided in the Uniform Stock Transfer Act that there shall be no restriction upon the transfer of shares unless the restriction is stated on the certificate. A reasonable restriction on transfer is permissible under this act. * * *."

And in § 38 of the same work it is said: "A by-law requiring the consent of the directors, officers or stockholders to a transfer of stock is unreasonable and void, unless the adoption of such a by-law is *expressly authorized by statute.* But a statute providing that transfers of stock shall be made on the books of the corporation in such manner and under such regulations as the by-laws may prescribe only authorizes the regulation of the formalities of the transfer of stock, and does not serve as authorization for a by-law requiring the consent of the directors or stockholders to a transfer.

512

"It has been held that a by-law limiting the transfer of stock to be made at the office of the corporation, personally or by attorney, *and with the assent of the president,* is invalid.

"If the restriction requiring the consent of the directors or stockholders is in the charter instead of in the by-laws, it may be held valid and enforceable as a contract between the stockholders. Similarly, where there has been a question as to the validity of the adoption of a by-law, such a restriction has been upheld as a contract. It has been held valid where a statute provided that the articles of incorporation should state 'the number of shares into which the capital stock is to be divided, and the restrictions, if any, imposed upon their transfer.'

"The right to transfer cannot be restricted unreasonably by a provision in the stock certificate; hence, provisions in a certificate that the stock cannot be transferred without the consent of the board of directors, or that it can be transferred only to certain persons, are void. It has been held, however, that such a restriction is reasonable and valid in the case of stock of a corporative apartment corporation. * * *." [Italics supplied.]

The text just quoted to the effect that a bylaw resting upon the consent of the corporation or its other stockholders is invalid is rested upon numerous authorities cited in note 19 on p. 73, among others, Morgan v. Struthers, 131 U.S. 246, 9 S.Ct. 726, 33 L.Ed. 132; Johnston v. Laflin, 103 U.S. 800, 803, 26 L.Ed. 532, which hold that, "Under the pretence of prescribing the manner of the transfer, the association cannot clog the transfer with useless restrictions, or make it dependent upon the consent of the directors or other stockholder." See also Section 39 of the last cited authority, which provides: "By the weight of authority, a by-law provision requiring a stockholder who desires to sell his stock to first offer it to the corporation or the stockholders at a price which may reasonably be ascertained, and allowing such stockholder to transfer his stock if the option to purchase is not exercised within a reasonable time, is valid. But it has been said that such a by-law provision is valid only where

it is authorized by statute, or by the charter, or is reasonably necessary to the business of the corporation. * * *." Christy & McLean on "The Transfer of Stock", Second Edition, § 39, p. 75.

Copious annotations and citation of authority may be found in 65 A.L.R. p. 759 and in 138 A.L.R. p. 647 and in the very recent volume 2 A.L.R.2d p. 747, supplementing the previous annotations above stated, all of which we have examined and we find nothing contrary to what has been stated above as applicable to the facts of this case. The rule in respect to restrictions on the alienability of corporate stock is found also in 13 Am.Jur. §§ 333, 335, which is in agreement with what we have stated above.

In § 336, p. 412, 13 Am.Jur. we find the following statement: "The right to transfer shares of stock may be restricted by agreement of the stockholders so long as such restriction is not contrary to public policy as being in restraint of trade. The tendency of the courts is to sustain a restriction imposed by a corporation upon the alienability of stock, if reasonable and the stock has been accepted following its adoption and with knowledge of its provisions, whether such restriction is valid as a bylaw or not, on the ground that it constitutes a valid agreement between the stockholders and the corporation, especially if it goes no further than to give an option on the stock for a limited period. These principles are particularly applicable as against stockholders who assent to, or participate in, the adoption of the bylaw. Under the Uniform Stock Transfer Act, however, there shall be no restriction upon the transfer of shares represented by a certificate of stock by virtue of any bylaws of the corporation issuing the certificate, or otherwise, unless the right of the corporation to such lien or the restriction is stated in the certificate."

No such restriction is made to appear in this case. A form of the certificate was before the trial court and is incorporated in this record. It contains no such restriction. The statutes regulating the formation of corporations, of course, constitute the charter of the corporation, which is a creature of the legislature. The legislature has the power and it is clearly with-

in its competency to prescribe the rule for evidencing restrictions against the alienability of the stock of a corporation formed under the laws of Alabama.

But appellant insists that said by-law though invalid as such may be enforced as a valid restriction on the alienability of the stock by agreement of the stockholders who adopted it by unanimous vote. This contention overlooks the fact that such restriction is not only in contravention of § 62, Title 10, Code of 1940 (which requires all restrictions to be endorsed on the certificate), but also wanting in mutuality, not supported by any other consideration and unilateral, imposing no obligation on the corporation or the stockholders to purchase the stock offered for sale by dissatisfied stockholders at any price. Sherrill v. Alabama Appliance Co., Inc., 240 Ala. 46, 197 So. 1; Cosby-Hodges Milling Co. v. Riley, 227 Ala. 347, 149 So. 612.

Our judgment, therefore, is that the decree of the circuit court is free from error and is due to be affirmed.

Affirmed.

LIVINGSTON, SIMPSON and STAKELY, JJ., concur.