Raymond COLEMAN et al., Appellants,

v.

C. A. KETTERING et al., Appellees.

No. 12934.

Court of Civil Appeals of Texas.

Galveston.

April 26, 1956.

Rehearing Denied May 17, 1956.

Fulbright, Crooker, Freeman, Bates & Jaworski and Baxter F. Holland, Houston, for appellants.

Robert L. Sonfield, Houston, for appellees.

HAMBLEN, Chief Justice.

Appellees sued appellants in the District Court of Harris County, seeking a declaratory judgment relative to a written contract whch imposes restrictions on the transfer of stock in a corporation, and an injunction against alleged threatened violations of the terms of such contract. After a trial before the court without a jury, judgment was rendered upholding the validity of the contract in question, and enjoining the violations thereof alleged by appellees.

The following facts are essential to a discussion of the issues presented on this appeal.

All litigants before this Court are stockholders in a Texas corporation known as Vend-A-Drink Company of Houston, Inc. On April 2, 1953, the contract here involved was entered into between such corporation and all of the stockholders. After reciting that its purpose was to guard against the introduction as stockholders in the corporation of strangers or outsiders in the business to be conducted, the contract provides in substance that any stockholder desiring to sell all or a part of his stock in the company must first offer it to the company and then to the other stockholders, at a price calculated in a manner set forth in the contract, before selling or otherwise disposing of it to a non-stockholder. Since this appeal is largely determinable by a proper construction of the contract, the material portions thereof, which consist of paragraphs 1 to 5, inclusive, are attached as Exhibit "A" to this opinion.

Appellees, who were plaintiffs in the trial court, alleged threats on the part of appellants to sell or transfer certain stock between themselves without first offering same to the corporation and thereafter to all stockholders, which sales or transfers would be effected unless enjoined. After hearing, the court entered its judgment declaring the contract to be a valid and binding obligation between appellants, appellees and Vend-A-Drink Company of Houston, Inc.; found that appellants are attempting to breach said contract by causing the endorsement prescribed by paragraph 5 of the contract to be deleted from the stock certificates, and were threatening to and attempting to effect sales and transfers of stock in violation of the contract. The judgment enjoins appellants from (1) deleting such endorsement from the certificates of stock; (2) issuing future certificates without such endorsement; and (3) selling or in any manner disposing of any stock in the company except in the manner and form prescribed by the contract.

On this appeal, appellants present four formal points of error in which they contend (1) that the contract is applicable only to stock transfers from stockholders to non-stockholders; (2) that the judgment fails to state with sufficient detail the acts which are enjoined; (3) that appellees are estopped by their own breaches of contract to invoke its terms against appellants; and (4) that the contract is invalid as being against public policy. We overrule appellants' points.

We follow only with difficulty the rationale of appellants' argument in support of their first point of error. They rely primarily upon the proposition that since the only expressed purpose of the contract was to guard against the introduction as stockholders in the corporation of strangers or outsiders, the contract should therefore be construed to have application only to sales or transfers to non-stockholders, and to have no application to sales or transfers between stockholders. Out of context, appellants lift the words " * * * such stockholder * * * before offering his

said stock to any person, firm, association or corporation not a stockholder of the corporation, shall first offer same to the other stockholders * * *," and contend that the entire contract is predicated thereon, and that none of its terms and provisions is applicable to a proposed sale from one stockholder to another stockholder. As stated, we have difficulty in understanding the argument. If the contract is capable of the construction for which appellants contend, it is at best, a strained and unnatural construction. The authorities which appellants cite are in no degree factually analogous to the present case, and lend no support to their argument. We say that the only construction of which the contract is reasonably and logically capable is that it applies to any stock sale or transfer by or between any and all persons who are parties to it. It is clear and unambiguous. The rule that the contract should be construed in favor of the least restrictive end result, upon which appellants rely, is but a rule of construction. Since we hold the contract to be unambiguous, the rule has no application.

■ What we have said appears, by necessary implication, to dispose of appellants' second point. The contract sets forth clearly and in detail the methods by which stock transfers can be effected. Appellants are enjoined from "selling or in any manner disposing of any stock in the said corporation except in the manner and form prescribed by the said written contract." This meets the requirements of the rule set forth by the Supreme Court in Villalobos v. Holguin, 146 Tex. 474, 208 S.W.2d 871. Appellants do not direct this complaint to the other portions of the injunction, and we see no fault therein.

■ Appellants cite two transactions as a factual basis for their third point. First, the evidence shows that a voting trust agreement was entered into by appellees, under which all stock originally subscribed by appellees was issued in their names as trustees. When the voting trust was dissolved, the stock was reissued to appellees individually, but not in the same amounts as were originally subscribed. Secondly, two hundred thirty-seven and one-half (237½) shares of stock in the company were subscribed by appellee Joachimi. These shares subsequently were paid for by appellee Kettering, and the stock was issued to Kettering, without same having been first offered to the company, and then to the other stockholders proportionately. Appellants contend that these transactions constitute violations by appellees of the terms of the contract, and estop them from enforcing the terms of the contract as against appellants. Appellants also direct our attention to evidence to the effect that one of appellees verbally offered his stock for sale to another of appellees under circumstances from which appellants contend it must be inferred that a violation of the contract was intended. This latter proposed transaction was never consummated, and therefore cannot work an estoppel even if the inference mentioned is justified. As to the first transaction, it was shown that Mr. George Sonfield, one of the appellees, was, at the time of the voting trust agreement, involved in a settlement of a tax matter with the government. To facilitate such settlement, stock for which he paid, and of which he remained the beneficial owner, was placed in the names of his stepfather and father-in-law, respectively, as trustees. When the trust was dissolved, the stock was reissued to George Sonfield individually, rather than to his stepfather and father-in-law. The transaction does not constitute in fact a transfer of the stock, and in no manner violates the terms of the contract. As to the second transaction mentioned, the following testimony of the witness George Sonfield is material:

"Q. You have heard the testimony here with respect to the subscription of certain stock by Mr. Joachimi to the effect that Mr. Kettering finally acquired that stock. Do you know, of your own personal knowledge, if that stock was offered to the corporation?

"A. It was offered at two different meetings to anyone that wanted to buy it including the corporation. Mr. Kettering

said he didn't want the stock and would be glad for anyone to take it off his hands.

"Q. Was that before the stock was issued?

"A. Yes sir."

It must be presumed that the trial court found facts in support of the judgment entered. A finding that the second transaction did not constitute a breach by appellees of the contract is supported by the quoted testimony.

Appellants' fourth point is to the effect that the contract is harsh, unreasonable and confiscatory in its application, and therefore invalid as being against public policy. The complaint is directed to the limitation of the sales price of stock to "book value" as defined in paragraph 4 of the contract. The only authority cited in support of the point is Security Life & Accident Insurance Co. v. Carlovitz, 251 Ala. 508, 38 So. 2d 274. In reply, appellees point out that Article 1358–15, V.A.T.S., known as the Uniform Stock Transfer Act, authorizes restriction upon the sale of the capital stock of corporations. Neither litigant cites any Texas authority determinative of the question here involved. Appellees, however, cite numerous authorities from other United States jurisdictions wherein, in well reasoned opinions, contractual restrictions analogous to that here involved have been upheld. In Moses v. Soule, 63 Misc. 203, 118 N.Y.S. 410, 414, affirmed 136 App.Div. 904, 120 N.Y.S. 1136, for instance, the following language is employed:

"In the management of corporations few things are more apparent than the desire to keep the control of the same in the hands of people who are congenial to the enterprise and to those who manage its affairs. A quarreling directorate is a misfortune to the stockholders of any corporation. When such situations occur, as they often do, there is no objection to the purchase by the corporation of the shares of the disgruntled stockholders and the resale of the stock to those more in harmony with the enterprise. In the organization of corpora-tions it is frequently provided in the articles or by-laws that a stockholder shall not sell his stock without first giving a stated period within which the corporation and the other stockholders may have opportunity to purchase. I find nothing in all this against public policy. On the contrary, it has to do solely with common sense and practical business."

In Re Feldstein's Estate, 25 Pa.Dist.R. 602, a by-law of a corporation forbidding the transfer of stock therein until the same had been offered for sale to the other stockholders at the book value thereof was held to be valid.

In Doss v. Yingling, 204 Ind. 571, 185 N.E. 281, a requirement that a stockholder give the other stockholders the opportunity to purchase such stock at its book value before selling same to a third person was held to be reasonable, and not against public policy.

We see no merit in appellants' contention that the contract is invalid as being against public policy, and accordingly overrule their point so directed.

Affirmed.

### Exhibit "A"

**1.**

No disposition, sale, assignment or transfer of all or any part of the shares of the capital stock of the above mentioned corporation, other than by testamentary disposition or disposition under the laws of descent and distribution shall be made by any party hereto, or by any heir, legal representative, devisee, testamentary beneficiary, successor or assign of any party hereto, unless and until such party shall have complied with the provisions hereof.

**2.**

Any stockholder upon desiring to sell or dispose of any of the shares of the capital stock of the corporation shall give written notice by registered mail to the Secretary of the Corporation of his desire to sell and dispose of the same, stating

therein the price per share at which he offers such stock for sale, but, as hereinafter provided, such price shall not be in excess of the book value of said stock as such book value is hereinafter defined. If, within 20 days after the receipt of said notice, the corporation, by authority from its Board of Directors, shall agree to purchase all or a portion of the stock so offered or desired to be sold, then, that portion of the stock so desired to be purchased by the Corporation must be sold and transferred to the Corporation, provided the purchase price, not in excess of the book value thereof as hereinafter defined, is paid within 20 days from the date of receipt of the written notice aforesaid. Any such stock which the corporation, acting by and through its Board of Directors does not agree to purchase within said 20 day period shall then be offered by the stockholder making such offer to the other stockholders of the corporation, provided, however, that the offering stockholder shall not sell any portion of the shares of the capital stock to any other stockholder at a less price, and/or upon terms more favorable to such other stockholder than those upon which he theretofore offered such stock to the corporation. Should any such offering stockholder offer any or all of such corporate stock to such other stockholders at a less price, and/or upon terms more favorable to such other stockholder, than those upon which he theretofore offered the same to the corporation, then in such event before he can sell to any such other stockholders he shall again give the same notice to the corporation as is required in the first instance and the corporation shall have a similar 20 day period within which to accept such new offer, but if the corporation, acting by and through its Board of Directors does not agree to purchase all or some portion of said stock within said 20 day period and such stockholder making such offer to sell his stock offers the same to the other stockholders of the corporation upon terms that are not more favorable to such other stockholders than those upon which he theretofore offered such stock to the corporation then

such stockholder making such offer to sell his stock shall, before offering his said stock to any person, firm, association or corporation not a stockholder of the corporation, first offer the same to the other stockholders of the corporation in such proportion as the respective stock ownership of each stockholder shall bear to the outstanding stock of said corporation, excluding therefrom the stock then being offered for sale, the purchase price for such shares of stock so desired to be sold to be the same as that hereinabove fixed in the event of its sale by any one or more stockholders to the corporation, that is, not in excess of the book value of such shares of stock as such book value is hereinafter defined; such stockholders to have the same 20 day period after receipt of notice of such offer within which to complete the purchase, and each such stockholder may purchase all or such portion of his proportionate part of such offered stock as he may desire. Should any then stockholder of the corporation decline to purchase his full proportionate share of the stock so offered to him, within 20 days after the receipt by him of notice of such offer then such portion of the corporate stock shall be offered to the remaining stockholders in such proportions as the respective stock ownership of each such remaining stockholder shall bear to the outstanding stock of said corporation, excluding therefrom the stock then owned by the stockholder or stockholders declining to purchase his or their full proportionate share; and the stock then being offered for sale; each such remaining stockholder to have the same 20 day period after the receipt of notice of such offer within which to purchase all or such portion of the offered stock as he may desire. Any portion of such stock which may not be purchased by stockholders as above provided may be sold to such person, firm, association or corporation as the stockholder offering to sell such stock may desire, but not at a less price or upon terms more favorable to the purchaser, than those upon which it was offered to such stockholders and should such stockholder desire to sell

such stock at a less price, and/or upon terms more favorable to the purchaser, than those upon which he theretofore offered the same to the other stockholders, then in such event, before he can sell to any such person, firm, association or corporation other than the stockholders, he shall again give the same notice to the stockholders as is required in the first instance and the stockholders shall have a similar 20 day period within which to accept such new offer.

### 3.

The purchase price hereunder of shares of stock of the Corporation shall not be in excess of the book value of such shares of stock as shown by the last semiannual or monthly balance sheet of the Corporation next preceding the date of the offer, but subject, nevertheless, to the definition of the term, "book value" that is hereinafter set forth.

### 4.

For the purpose of this agreement the book value of shares of stock shall be determined by a certified public accountant licensed by the State of Texas, in accordance with the following provisions: (a) Good will and other intangible property shall be deemed to be of no value, and shall be excluded and not taken into consideration; (b) Furniture, furnishings, fixtures, machinery, equipment, etc., on hand at the time of making the last semiannual or monthly balance sheet aforementioned shall be taken as of the value at which the same shall appear in such balance sheet; (c) Current accounts receivable shall be taken in at the face value thereof, less discount (if the accounts shall be carried gross upon the books), and less a reserve of three (3%) per cent for depreciation to be thereafter, but within not later than four months, appropriately adjusted; (d) All merchandise whatsoever and wheresoever the same may be, and whether in process of manufacture, in transit, or otherwise, shall be taken in at the cost or market value, whichever shall be lower at that time; (e) Any securities acquired by the Corporation shall be taken in at the market value thereof; (f) Federal, State and Municipal taxes and assessments shall be apportioned and charged as a liability as of the date of the aforementioned semiannual or monthly balance sheet.

### 5.

The parties hereto agree that each outstanding stock certificate of the corporation now or hereafter owned or held by them shall be made subject to this agreement, and, to such end, said parties mutually agree that they will at the next following or a subsequent meeting of the stockholders of said corporation, vote their stock in support of a by-law provision or amendment, as the case may be, whereby each stock certificate heretofore, or hereafter issued by the corporation shall bear the following indorsement: "The shares of stock represented by this certificate and the transfer thereof are subject to all of the terms and provisions of an agreement executed April 2, 1953, between this Corporation and divers stockholders, a copy of which is on file at the office of this Corporation."