C. C. BURNETT, Appellant,

v.

WORD, INC., et al., Appellees.

No. 4593.

Court of Civil Appeals of Texas.

Waco.

Feb. 23, 1967.

Rehearings Denied March 23, 1967.

D. B. Kultgen, Waco, for appellant.

Naman, Howell, Smith & Chase, Waco, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendant Burnett from a summary judgment declaring a contract between Burnett and other original stockholders of Word Records, Inc. invalid; and declaring the merger of Word Records, Inc. and Word Distributing Company valid.

Word Records, Inc., Word Records Distributing Company and certain of their stockholders, as plaintiffs, sued defendant Burnett for declaratory judgment that a contract made in December, 1958 between Burnett and other shareholders of Word Records, Inc. and Word Records Distributing Company was void. By intervention, Word, Inc. alleged that Word Records, Inc. and Word Records Distributing Company had merged, and that it was the surviving corporation. It sought declaratory judgment that the 1958 contract was void; and that the merger of Word Records, Inc. and Word Distributing Company was valid. Burnett, by answer and cross-action, asserted the contract was valid, and that the merger of the two corporations was void.

The trial court rendered summary judgment that the 1958 contract was void; and that the merger of the two corporations was valid.

Defendant Burnett appeals, contending the trial court erred in rendering summary judgment that: 1) the merger was valid; and 2) that the 1958 contract was void.

Word Records, Inc. and Word Distributing Company were two small corporations

owned principally by the same stockholders and principally by the directors (who were the same in each company). Word Records was organized in 1954 and manufactured religious records. Word Distributing was organized in 1955 and marketed the products of Word Records, Inc. McCracken and associates were the managment team of both companies. Defendant Burnett and Messrs. Burch, Howell, Tabb and Fentress purchased 50% of the stock of both corporations (10% each). Burnett would not have purchased stock except that the above group had 50% and could prevent control by the McCracken group. Burnett, Burch, Howell, Tabb, Fentress and the McCracken group, in 1956, entered into written agreements that if any party to the agreements should desire to sell his stock, he would offer same to the corporation or alternately to the remaining shareholders in the proportion to each's ownership interest in the corporation. In 1958 Fentress, Burch and Tabb wanted to sell their stock to McCracken. This could not be done without Burnett's consent. Burnett did not want to be a minority stockholder in corporations controlled by McCracken, and desired that borrowing be restricted.

McCracken and associates, and Burnett and Howell, (stockholders and directors of both corporations) entered into the December, 1958 agreement, wherein, in consideration of the Fentress-Burch-Tabb stock being permitted to be purchased by the McCracken group, the parties to the contract agreed (in part): that *"Each binds himself to vote as stockholders and directors in such a manner as to carry out bona fide the purposes and intent of this contract as herein expressed."*

a) That Burnett and Howell remain as directors of the Corporations for the duration of the contract.

b) That Word Records, Inc. not incur any new financial obligation in excess of $10,000, and Word Distributing not incur any new financial obligation in excess of $40,000, except by unanimous approval of all directors.

c) The contract to remain in effect for 10 years.

In 1966 the McCracken group desired to expand and to borrow $200,000 from Prudential Insurance Company. Burnett, who held 27% of the preferred stock, opposed borrowing the money. Prudential required a merger of the two companies as a prerequisite to making the loan. On May 28, 1966, the shareholders of Word Records, Inc. voted to issue 800 shares of treasury preferred stock to one of its employees, Kurt Kaiser. The effect of the issuance of such 800 shares to Kaiser was to dilute Burnett's ownership to below 20%. Article 5.03 Texas Business Corporation Act, V.A. T.S. provides a corporate merger must be approved by a vote of 80% of the stock; and Article 4.03 provides for stock class voting where the value of the stock (as here) will be changed by the merger. The issuance of the stock to Kaiser destroyed Burnett's power to block the merger. Burnett called attention to this at the meeting at which the shareholders voted to issue Kaiser the stock, and made various proposals by which stock could be issued to Kaiser without a dilution of his interest. All were rejected. Kaiser voted for the merger, and only by virtue of his vote, the necessary 80% for merger was carried. Article 2.22, subd. D Business Corporation Act, gives a corporation the right to issue Treasury stock to its officers or employees by a vote of two-thirds of the shareholders.

## THE MERGER

Under Articles 5.03 and 4.03, Business Corporation Act, the merger could only be accomplished by a vote of 80% of each class of stock. Burnett had 27% of the preferred stock, was opposed to the merger, and was in position to block same. The shareholders by ⅔'s vote issued employee Kaiser 800 shares of treasury preferred stock. This reduced Burnett's percentage to below 20%. Kaiser voted for the merg-

er, and it carried only because of the vote of his stock. The shareholders issued the stock to Kaiser under Article 2.22D of the Business Corporation Act.

Defendant contends that in construing a statute it must be read in the light of other statutes on the same subject (citing Hunter v. Whiteaker & Washington, CCA, Er. Ref., 230 S.W. 1096); that if the purpose and intent of issuing the stock to Kaiser was to circumvent Articles 5.03 and 4.03, the merger was invalid; and that the record raises a fact question as to the existence of such purpose and intent, precluding summary judgment.

■ We reject the contention. Article 2.22, subd. D is not ambiguous, and is not qualified. It provides unless the articles of incorporation limit otherwise, treasury stock may be sold to officers or employees by a two-thirds vote of the stockholders. This was done, and we are not authorized to engraft an arbitrary qualification on the Act. The stock was legally issued to Kaiser. The merger carried by an 80% vote as required by Articles 5.03 and 4.03. The merger is valid.

### THE CONTRACT

The agreement binds the parties thereto, (McCracken, Norcross, Norfleet, Meyer, Burnett and Howell) "to *vote as stockholders and directors in such a manner as to carry out bona fide the purposes and intent of this contract as herein expressed.*" The provisions here involved are: 1) that Burnett remain a director, and 2) that the corporation not incur new financial obligation in excess of $50,000, except by unanimous approval of all directors.

■ The agreement bound the parties in advance, *as directors*, not to borrow in excess of $50,000 except by unanimous vote of the directors. An agreement by which directors abdicate or bargain away in advance the judgment the law contemplates

they shall exercise over the corporation is void. The agreement of the parties to bind themselves *as directors* is void. Roberts v. San Jacinto Shipbuilders, Tex.Civ.App., (nre) 198 S.W.2d 488; Hamblen v. Horwitz-Texan Theatres, Tex.Civ.App. (nwh) 162 S.W.2d 455; 45 A.L.R.2d p. 811; 17 C.J.S. Contracts § 199, pp. 995, 996.

■ The agreement also bound the parties as *stockholders, to vote to retain Burnett as a director, and "to vote in such a manner as to carry out bona fide the purposes and intent of this contract as herein expressed."* These portions of the agreement are valid. 17 C.J.S. Contracts § 199 p. 996, 2nd column. 45 A.L.R.2d 801, 802 expresses the rule thusly: "* * * the modern view on the question whether a stockholder's contract, by which the manner in which he may vote his holdings is controlled, is valid, appears to be that such contracts contain no inherent defect requiring that they be struck down. Under this view, agreements by which a stockholder binds himself to vote in a specified manner with regard to the election of corporate officers and directors have been upheld, as have other agreements, as, for example, agreements binding stockholders to vote their stock in accordance with the will of a majority of the parties to the agreement."

Defendant plead that if the merger be declared valid he was entitled that the stock of all parties to the agreement be voted in favor of an amendment to the Corporation's Charter providing it shall not incur new financial obligations in excess of $50,000, except by unanimous approval of all directors.

We think the contract valid as to the obligations the parties bound themselves to as *stockholders*. Summary judgment that the contract is void in this respect is erroneous.

The portion of the judgment declaring the merger valid is affirmed; the portion

of the judgment declaring the contract void is reversed and remanded.

Costs of appeal assessed one-half each against plaintiffs and defendant.

Affirmed in part.

Reversed and remanded in part.