**Lofflin F. IRWIN, Appellant,**

v.

**PRESTRESSED STRUCTURES, INC.,**
**et al., Appellees.**

No. 7756.

Court of Civil Appeals of Texas.

Amarillo.

July 17, 1967.

Rehearing Denied Sept. 5, 1967.

**492**

Nelson, McCleskey & Harriger, Clarence P. Brazill, Jr., Lubbock, for appellant.

Evans, Pharr, Trout & Jones, Wm. H. Evans, Lubbock, of counsel, and Jim Kimmel, Lubbock, for appellees.

CHAPMAN, Justice.

This is an appeal by Lofflin F. Irwin from an order of the trial court refusing to grant him a temporary injunction against J. B. White and Ralph Cocanougher, individually, and in their capacities as officers and directors of Prestressed Structures, Inc., and against John A. Flygare in his capacity as agent and trustee for an undisclosed purchaser of Prestressed Structures, Inc. common stock.

The shareholders of the corporation at its inception were J. B. White with 7,500 shares and Lofflin Irwin with 7,500 shares. At the organizational meeting of the corporation it was resolved that Ralph Cocanougher be given an option to purchase stock, which he exercised subsequent to incorporation by the purchase of 500 shares of the total outstanding stock of 15,500 shares. He also had an option to purchase an additional 7,000 shares of unissued authorized stock. It was also resolved at the organizational meeting of the directors that all stock certificates issued by the corporation be endorsed with a restriction that in the event a shareholder wished to sell his stock, he must first offer it to the corporation at net book value. Accordingly, the stock certificates issued carried on the back the restriction that if the stock represented by "this certificate" be offered for sale, it must first be offered in writing by the holder to the corporation at the net book value and the corporation should have sixty days after receipt of such offer to purchase said stock at such net book value, but if it should not be bought by the corporation within such period of time the stock might be sold under any terms and conditions, at the election of the holder.

Personal problems of disagreements arose between Irwin on the one hand and White and Cocanougher on the other. After a number of personal encounters and problems between Irwin and the other two shareholders, White, in his individual capacity as a stockholder and not as a director, agreed with John A. Flygare, agent and trustee of an undisclosed principal, upon arrangement by Cocanougher to sell to Flygare, Trustee, the 7,500 shares of stock he owned and further agreed in writing to vote his 7,500 shares to cause the corporation to decline to exercise the corporation's option to buy the White stock at book value. Such agreement provided only that he would vote his stock. There is not any evidence in the record that he obligated himself in advance to vote as a director, thus placing him in a

fiduciary capacity. In any event no damage or fraud is shown on the corporation.

At a stockholders' meeting duly called for that purpose White and Cocanougher, on behalf of the corporation, and with majority stock control, voted their stock to decline to permit the corporation to exercise its option to buy the White stock. Irwin abstained from voting his stock. The same result was reached at a Directors' Meeting. White subsequently sold his stock to John A. Flygare, Trustee, at less than book value and Ralph Cocanougher exercised his option to buy the 7,000 additional shares of unissued but authorized stock, paid the money and received the stock. Following such transactions the corporation's stock was owned by Cocanougher, Irwin and John A. Flygare, Trustee, in the respective amounts of 7,500 shares, or $1/3$ each. Thus, Irwin's position with respect to stock ownership is the same as it was before the related transactions took place. By voting to have the corporation refuse to exercise its option to buy his stock at book value White received less money than he would have had he voted for the corporation to take funds from the corporate treasury to purchase his stock. He admitted in effect that he would not have sold it to the corporation even if he had to keep it because it would have placed Cocanougher in the position of minority stockholder to Irwin, Cocanougher owning at that time only 500 shares to Irwin's 7,500 shares.

In his five points of alleged error appellant asserts reversible error of the court in failing to grant the temporary injunction because the undisputed facts show the parties were subject to a valid contract; such contract was breached; the court failed to apply the proper rules of law governing "probable right and probable injury;" the court erred in failing to properly apply the law to the undisputed facts; and, the order of the trial court in denying the temporary injunction constituted an abuse of discretion.

Article 2.22, Section A, Business Corporation Act, Vol. 3A, Vernon's Texas Civ.St. provides, inter alia: "Any corporation may impose restrictions on the sale or other disposition of its shares and on the transfer thereof, which do not unreasonably restrain or prohibit transferability, *if each such restriction is expressly set forth in the articles of incorporation or bylaws of the corporation* * * *" Neither the charter nor by-laws of Prestressed Structures, Inc. contain such restrictions, but they exist only as one of a number of resolutions adopted at a Directors' Meeting of February 23, 1959. Being statutory, we believe the restriction on the stock sale should be imposed in the manner required by the applicable statute. (Emphasis added).

Appellant contends the Directors resolution signed by White as a director was an "instrument" executed by White and Irwin constituting a valid contract binding appellees to its terms, and cites as authority therefor Coleman vs. Kettering, "298 S.W. 2d 953" The case of Coleman v. Kettering, 289 S.W.2d 953 (Tex.Civ.App.-Galveston, 1956, no writ) appears to lend more support to appellees' contention than it does appellant's claim. There the stockholders in Vend-A-Drink Company, a corporation, after reciting that its purpose was to guard against the introduction as stockholders of strangers and outsiders in the business to be conducted, did in fact sign a contract with the corporation to the effect that any stockholder desiring to sell his stock " * * * must first offer it to the company and then to the other stockholders, at a price calculated in a manner set forth in the contract, before selling or otherwise disposing of it to nonstockholders," and further agreed that at the next following or a subsequent meeting of the stockholders to vote their stock in support of a by-law provision subject to the terms of the contract which provided for the restrictions just related. The case, at least by dictum, holds the stockholders could agree in advance on the voting of stock, one of the very matters complained about here in the agreement of White as a stockholder

to vote his shares of stock for the corporation to decline to buy such shares.

Assuming, arguendo only, that there was an enforceable restriction on the sale of White's stock, the corporation waived its option to buy the stock. After such waiver by the majority of the voting stock, White then sold his shares to John A. Flygare, Trustee.

The weight of authority is that stockholders may combine to control the management and business of a corporation and agree in pursuance thereof that they will vote their stock as a unit according as a majority of them may determine, provided no fraud is committed or undue advantage taken of non-member stockholders of the combination. 18 C.J.S. Corporations § 551, p. 1256. Texas follows the majority view; i. e., "It is generally held that agreements or combinations by stockholders to vote their stock so as to control corporate action, are permissible if, without fraud, they seek to accomplish only what they might have accomplished without the agreement. Roberts v. Whitson, 188 S.W.2d 875 [2-4] 877 (Tex.Civ.App.-Dallas, 1945, writ ref'd w.o. m.) Since White with 7,500 shares and Cocanougher with 500 shares controlled the majority voting stock and could have accomplished the objective without the prior agreement, there appears to be no fraud in the agreement nor undue advantage taken of Irwin. See also Burnett v. Word, Inc., 412 S.W.2d 792 (Tex.Civ.App.-Waco, 1967) and in the Massachusetts jurisdiction, Kentucky Package Store v. Checani, 331 Mass. 125, 117 N.E.2d 139 (Court of Last Resort, Mass., 1954); Blabon v. Hay, 269 Mass. 601, 169 N.E. 268 (Court of Last Resort, Mass., 1929). The Waco Court of Civil Appeals in Burnett v. Word, Inc., held an agreement of the parties in advance, as directors, to bind themselves as directors is void, but that the contract was valid as to the obligations the parties bound themselves to as stockholders. In so holding the Court, in quoting with approval from a textual statement, said: " * * * the modern view

on the question whether a stockholder's contract, by which the manner in which he may vote his holdings is controlled, is valid, appears to be that such contracts contain no inherent defect requiring that they be struck down. Under this view, agreements by which a stockholder binds himself to vote in a specified manner * * * have been upheld, as have other agreements, as, for example, agreements binding stockholders to vote their stock in accordance with the will of a majority of the parties to the agreement."

In Blabon v. Hay, supra, the by-laws of the company provided that no shares of stock should be sold by an owner until he had offered them in writing for sale to the corporation. The court held: "The provisions in the by-laws as to the transfer of shares were inserted for the benefit of the corporation and could be waived by the directors."

The Supreme Court of Rhode Island in Boss v. Boss, 200 A.2d 231 (1964) has held: "* * * a stockholder * * * 'has the legal right to vote with a view to his own benefit * * *.' (Citing both textual and case law authorities) * * * Nor can the motive or purpose for which the stock was purchased adversely affect such purpose. * * * The decree of the superior court in effect restrains the majority stockholders from exercising their lawful authority to decide a plain matter of corporate policy concerning which courts lack the authority to interfere." The court then cited and quoted from the Massachusetts case of Kentucky Package Store v. Checani, supra. (Parenthetical statement ours).

White received less for his stock by selling it to Flygare, trustee, than he would have received had he sold it at book value to the corporation. Therefore, he did not profit at the expense of the corporation nor, as for that matter, at the material expense of Irwin.

 "The purpose of a temporary injunction is to preserve the status quo of the subject matter of a suit pending a final trial of the case on its merits. * * * A trial judge therefore has broad discretion to grant or to deny a writ when the pleadings and the evidence show a probable right to recover of the applicant and a probable injury to him if the writ is not granted." Camp v. Shannon, 162 Tex. 515, 348 S.W.2d 517. It necessarily follows, then, "* * * that a trial judge abuses his discretion if he grants a writ when the evidence fails to furnish any reasonable basis for concluding that the applicant has a probable right of recovery."

 "The applicant has, and in equity and good conscience ought to have, the burden of offering some evidence which, under applicable rules of law, establishes a probable right of recovery." Camp v. Shannon (supra). Believing he did not do so, we hold the trial court did not abuse its discretion in refusing the extraordinary relief of a temporary injunction.

The judgment of the trial court is affirmed.