This is an appeal from a judgment of the Circuit Court of Mobile County, holding that a buy-sell agreement of capital stock of a closely held corporation was null and void. We reverse.
In October, 1977, the stockholders of Pittman Equipment Co., Inc., consisting of James B. Pittman, S.A. Hodges, Wyman G. Rainey, William W. Lamar, and Isaac L. Dennis, and the Corporation entered into an agreement to impose restrictions on the transfer or other disposition of the shares of the Corporation; to grant options to purchase such shares; to provide a method for purchasing the share interest of a deceased stockholder and to make provision for the adequate financing of the purchase of shares of a deceased or retiring stockholder. The consideration was the mutual agreements and covenants set forth in the agreement. *Page 15 
The provision for disposition of the stock of a deceased stockholder is here for construction.
Item 2 of the agreement provides:
 2. Option to purchase shares on death. Upon the death of any Shareholder, all the shares of such Shareholder shall be subject to purchase as provided in this paragraph. Within thirty (30) days after the appointment of the legal representatives of such deceased Shareholder, a meeting of the Shareholders shall be called by the Corporation, at which meeting the Corporation shall determine whether or not it shall exercise its option to purchase all or any part of the shares of such deceased Shareholder. The purchase price shall be as provided in sub-paragraph 3 (d) hereof and may be made from the Corporation's surplus or from the proceeds of insurance owned by the Corporation on the life of a deceased Shareholder. In the event the Corporation does not exercise its option to acquire all or any part of the remaining shares of a deceased Shareholder, then the remaining shares of such deceased Shareholder shall be offered for sale and shall be subject to the option on the part of each of the other Shareholders to purchase a proportionate share, at the purchase price as determined in sub-paragraph 3 (d) hereof. In the event that all the shares of the deceased Shareholder so offered for sale are not purchased by the Corporation or other Shareholders pursuant to the provisions of this Agreement, then all restrictions imposed by this Agreement upon such shares shall forthwith terminate.
Item 3 (d) states the purchase price of the stock in the event of exercise of the option to purchase.
 (d) Purchase Price. The term "purchase price" shall mean the value of a share of stock established at the annual meeting of the Shareholders each year. The value so established shall be noted in the minutes of that meeting and shall be conclusive and binding on each party hereto and all those that may ever become beneficial owners of stock of the Corporation hereafter. Provided, however, in the event the book value of a share of stock of the Corporation as determined by the Federal Income Tax Return of the Corporation shall exceed the value of a share of stock established at the Shareholders meeting, then that book value shall be the "purchase price", as herein defined.
On October 30, 1978, James B. Pittman, a 60% owner of the company's stock died. Subsequently, his wife, Catherine was appointed executrix of his estate. On December 15, a special stockholders and directors meeting was held to consider the corporation's option to purchase Pittman's stock pursuant to the buy-sell agreement. Catherine did not attend the meeting. She gave her proxy to her attorneys.
The directors adopted a resolution that the Corporation exercise its option to purchase Pittman's stock. A stockholder's resolution authorizing the Corporation to purchase Pittman's stock failed to pass when Catherine's proxy, holder of a 60% interest, voted against the resolution. Hodges, a holder of 500 shares, then stated that he exercised his personal option to buy his proportionate share of the stock from Pittman's estate pursuant to the agreement. He called upon the Estate's representatives to offer and to produce the proportionate shares for sale. They declined.
On the same date that the stockholders and directors meeting was held, Catherine Pittman as executrix of the estate of James B. Pittman, filed a declaratory judgment action against Pittman Equipment Co., Hodges, Rainey, Dennis, and Lamar requesting that the court declare the buy-sell agreement was null and void. Hodges, by answer, denied the invalidity of the buy-sell agreement and counterclaimed and cross-claimed against Catherine and his co-defendants the Corporation, Rainey, Lamar, and Dennis in a derivative action for the corporation to enforce the agreement, and for a declaratory judgment that he had validly exercised his option to purchase his proportionate share of the stock under the *Page 16 
agreement. He also requested a temporary restraining order and a preliminary injunction to stop stock transfers, shareholder meetings, and disbursements of insurance proceeds due the Corporation on the death of James B. Pittman.
The Corporation and the individual defendants Lamar, Dennis, and Rainey answered in Catherine's suit, and admitted that the buy-sell agreement was void. After an evidentiary hearing, Hodges' motions for injunctive relief were denied.
At the pretrial conference Catherine's attorney directed the trial court's attention toward two of the issues she asserted in her complaint: 1) the legislature had abolished the right of a corporation to restrict the alienation of its stock; and 2) the agreement lacked mutuality. (The other issues she had raised were a failure to meet a condition precedent in setting the purchase price and unreasonableness in failure to include the insurance proceeds in a determination of the book value of the stock.) Subsequently, Mrs. Pittman conceded that the legislature had not abolished the Corporation's right to restrict transfers of its stock. Hodges contends that he indicated to the trial court that he would submit to the court for determination whether the agreement was void as a matter of law without testimony being taken, but only on the issue of lack of mutuality. Catherine, the Corporation and the individual defendants contend that the agreement was submitted not only on the mutuality issue but also on the condition precedent and unreasonableness issues. The trial judge issued a decree that the buy-sell agreement was void as a matter of law. Hodges appeals.
Contrary to the contentions of the appellees, Catherine Pittman, the Corporation, and the other individual defendants, we are restricted to review the judgment of the trial judge as rendered by him. His judgment declared that the buy-sell agreement was "null, void and unenforceable as a matter of law." Thus, the other issues are not before us.
The appellees lean heavily on Security Life and Accident Ins.Co. v. Carlovitz, 251 Ala. 508, 38 So.2d 274 (1949), as their authority that the agreement lacks mutuality. That case, in our opinion, does not control the mutuality issue in this one. The issue in Security Life was the validity of a corporate by-law — not an agreement between stockholders and the corporation. The bylaw provided that a stockholder could block the transfer of stock by another stockholder by signifying his desire to purchase. Moreover, by signifying his desire to purchase, the stockholder who blocked the sale was not bound to purchase the stock. Thus, he could either prevent any transfer for an indefinite period, or force a transfer on his terms. The Court concluded that the bylaw proviso lacked mutuality, and was, therefore invalid. But, by reaching this conclusion, the Court recognized the validity of first option agreements when the option is exercised within a reasonable time, citing Christy 
McLean, The Transfer of Stock, Second Edition, § 39, p. 75.
We turn now to the construction of the buy-sell agreement before us. We note, first, that the agreement was signed by all of the stockholders, and on behalf of the Corporation by its president; second, provisions restricting the sale of the stock were duly placed on the certificates; third, a plan of ownership should certain events occur, was implemented which maintained the personal relationships of the stockholders; fourth, there were no unreasonable restraints on alienation of the stock; and fifth, the agreement was supported by the mutual agreements and covenants of the corporation and stockholders, therefore, there was no lack of mutuality.
Although unmentioned in briefs, we observe that Item 8 provides:
 Except as herein otherwise provided, this Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their personal representatives, successors and assigns. It is specifically understood and agreed that each and every owner of stock, including subsequent owners, shall be bound by the provisions contained in this Agreement, including specifically, but not limited to the restriction *Page 17 
on the sale or encumbrance of stock, and the option to purchase shares.
We conclude, and hold, that the agreement is binding and enforceable.
We pretermit discussion of the issue of whether the insurance proceeds owned by the Corporation should be included as an asset to determine the book value of the stock. We do not construe the trial judge's order as having decided that issue.
The judgment of the trial court holding the buy-sell agreement to be null, void and unenforceable is reversed, and the cause remanded.
REVERSED and REMANDED.
TORBERT, C.J., and ALMON, EMBRY and BEATTY, JJ., concur.