**NATIONAL EDUCATORS LIFE INSUR-
ANCE COMPANY, Appellant,**

**v.**

**MASTER VIDEO SYSTEMS, INC.,
Appellee.**

**No. 92.**

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 30, 1965.

Two Motions for Rehearing Denied
Jan. 27, 1966.

Keys, Russell, Watson & Seaman, by M. W. Meredith, Jr., Corpus Christi, for appellant.

Fischer, Wood, Burney & Nesbitt, by James R. Harris, Corpus Christi, for appellee.

NYE, Justice.

Master Video Systems, Inc., appellee, brought suit against National Educators Life Insurance Company, appellant, for damages alleging conversion of certain personal property located in a motel owned by W. C. Price and wife Geraldine Price. Trial was before a jury. Both plaintiff and defendant moved for judgment on the verdict or for judgment non obstante veredicto. The trial court awarded judgment to the plaintiff in the amount of $16,633.18 as actual damages. Defendant has appealed from that judgment and both parties seek relief in this Court, the plaintiff by cross assignments of error. The various parties to the transaction giving rise to the dispute should, at the outset be clarified, because of the complicated fact situation involved.

W. R. Price and wife Geraldine Price decided to build a motel in Port Aransas, Texas. W. R. Price will hereafter be referred to as Price in this opinion. A corporation was formed by Price and others for purposes related to the motel. This corporation was called Paradise Isle Motor Hotel Corporation, hereinafter referred to as Motel Corp.

Price got in touch with Educators Industry, Inc., a building contracting firm, domiciled in Fort Worth, Texas, hereinafter called Industries, who agreed to construct a fifty-two unit motel for $350,000.00 and also agreed to obtain the interim and long term financing for Price.

Industries obtained the long term financing through National Educators Life Insurance Company, also a corporation domiciled in Fort Worth, Texas, and hereinafter called Nelico. Nelico was the defendant in this law suit and the appellant herein.

Motel Corp. purchased all of the furnishings for the motel including television sets, carpeting, air conditioning units, all equipment, supplies, furniture and fixtures, all of such property hereinafter called furnishings, from Master Video Systems, Inc., a Delaware corporation with offices in Port Washington, New York, hereinafter called MVS. The purchasing arrangement for the furnishings was such, that title was in MVS. Motel Corp. leased all of such furnishings from MVS on a monthly rental basis for a term of five years. The agreement gave Motel Corp. an option to purchase all of such furnishings at the end of the term for a nominal sum. MVS was the plaintiff in the trial court and appellee herein.

Price defaulted on his note and Nelico foreclosed on the deed of trust and a chattel mortgage given Nelico by Price individually and joined therein by his wife. The crux of the law suit hinges on the question of whether or not Nelico had a valid mortgage on the furnishings. MVS says not and we agree.

The motel operation was never a success. After Price had operated the motel two years, Nelico advised Price that he was more than a year behind in his payments on his note, and that the note was then and there accelerated. Notice of foreclosure proceedings was given. After about three months of delay, Nelico foreclosed on the motel under its deed of trust and on a chattel mortgage. Nelico purchased the motel and furnishings at the foreclosure sale and went into operation of the motel in March of 1961, and continued operating the motel until the time of trial. At the same time Motel Corp. was likewise in default on its lease payments to MVS. Prior to the foreclosure sale on the furnishings, MVS notified Nelico of MVS's superior right to the furnishings, however Nelico foreclosed on the furnishings anyway. MVS brought this suit against Nelico for conversion of its furnishings.

MVS claims title through its purchase and lease back arrangement with Motel Corp. Nelico claims title through the chattel mortgage executed by Price. MVS says that Nelico's mortgage was from Price individually to Industries and from Industries to Nelico and that Motel Corp. and MVS were never parties to Nelico's mortgage. Therefore, as MVS argues, Nelico has no claim of title under its mortgage, because Nelico's assignor in title took from Price and wife, when the actual title to the furnishings or the right to mortgage the furnishings was in Motel Corp. or MVS. Nelico, on the other hand contends, that MVS agreed to a mortgage of their interest in the furnishings in favor of Nelico and that therefore Nelico had a superior lien on the furnishings at all times; (1) based on the written chattel mortgage; (2) based on a superior equitable mortgage; and/or (3) based on the fact that MVS's security interest in the furnishings was taken with notice of a superior lien in Nelico.

Originally, Price was in the lumber business in Dallas, Texas. He and his wife decided they would build a motel in Port Aransas on Mustang Island. Price purchased and paid for a seven-acre tract in Port Aransas, Texas. In March of 1958, Price met with a Mr. Wm. R. Roberts, Jr., Executive Vice President of Industries, and with Roberts' attorney, a Mr. Walter G. Cook. An agreement by letter form was made between Price and Industries concerning the construction of the motel. This letter agreement was dated March 25, 1958, and is hereinafter referred to as the "March 25th Agreement". This agreement provided for Price to execute a mechanic's lien or consent for a mechanic's lien in favor of Industries for $350,000.00 as consideration for the building of the fifty-two unit motel. Price was to be responsible for furnishing all air conditioning window units, carpeting, furniture and furnishings for the motel at no additional cost to the contractor, Industries. Price further agreed to obtain letters or agreements from sup-

pliers to the effect that they would subordinate their interest in the furnishings to the mechanic's lien and any renewals and extensions thereof and that Industries was to have its mechanic lien rights converted into a first mortgage on such furnishings. Industries was to obtain the financing with a loan in the amount of $350,000.00 at 6% interest for a term of fifteen years to be repaid in monthly installments of $2953.54. The agreement obligated Price to create a corporation (Motel Corp.) and to place in the corporation land and assets belonging to Price individually in the amount of $80,000.00 and then have Motel Corp. pledge these assets to Industries as additional collateral for the loan. Motel Corp., when created, was authorized to mortgage its assets to Industries. Price, individually, further agreed to execute any and all papers that the loan company or contractor, Industries, might require to accomplish this transaction. Neither Nelico, Motel Corp., nor MVS was a party to this agreement.

During the time that the motel was being built, Price negotiated with a number of suppliers for the furnishings and finally made an agreement with MVS to finance and supply the furnishings for the motel. MVS paid for the furnishings from the various suppliers through Motel Corp. Motel Corp. took title from the suppliers, sold the furnishings to MVS, and then leased the furnishings back from MVS. In the two contracts dated April 30, 1958, hereinafter referred to as the "April 30th Agreement", Motel Corp., in effect, sold $82,500.00 worth of furniture and $10,800.00 worth of air conditioning equipment (the furnishings) to MVS, and MVS then in turn, by the "April 30th Agreement", leased back all of the furnishings to Motel Corp. These April 30th agreements are identical except as to the description of the property. The jury found that the "April 30th Agreement" reserved title in the furnishings to MVS with the intent to secure the payment to the indebtedness on such items owned by Motel Corp. to MVS. There was sufficient evidence to uphold these jury find-

ings. The effect of the "April 30th Agreement" and the jury findings placed the title to the furnishings in MVS. This was a security arrangement. Motel Corp. had, however, the right to mortgage the furnishings by the terms of the "April 30th Agreement". In any event either MVS or Motel Corp. could have given a lien on the furnishings to Industries or Nelico. Since the ownership of the furnishings and/or title was either in MVS or Motel Corp. at the time the furnishings were installed, and this fact is not in dispute, the question to be resolved is: Did MVS or Motel Corp. give a mortgage to Industries or Nelico at any time, so as to create a superior title interest in them over MVS?

The terms of the "April 30th Agreement" provided that MVS was to purchase, and Motel Corp. was to sell the subject furnishings when said furnishings were actually installed in the motel. The agreement provided that: Such furnishings shall be deemed to have been installed in said motel when MVS received written notice by Motel Corp. to that effect and such notice shall state: " * * * that there is no vendor's or mechanic's lien or other encumbrances on said furniture (equipment) other than a mortgage, or an agreement to execute a mortgage in favor of National Educators Life Insurance Company (Nelico), Fort Worth, Texas, in the principal amount of $350,000.00 to the extent that said mortgage is secured by the furniture (equipment) described in Schedule 'A'. (2) that said furniture is, in all respects, satisfactory." The jury found that MVS recognized that Motel Corp. by the "April 30th Agreement" had a right to give a mortgage to Nelico and that by the "April 30th Agreement" Nelico was to have a first mortgage on the equipment.

On or about November 4, 1958, the motel building was completed and the furnishings were installed. Motel Corp. gave the required notice to MVS that such furnishings had been installed. The letter of notice tracked the language of the "April 30th Agreement", that is, that: There were no other incumbrances, etc., against the furnishings "other than a mortgage, or an agreement to execute a mortgage in favor of National Educators Life Insurance Company (Nelico). * * . * "

On November 18, 1958, the closing date of the security transaction between Industries and Price, Price and his wife, as individuals, executed a promissory note, a deed of trust and a chattel mortgage in favor of Industries.

The chattel mortgage was executed in duplicate, one signed by Price and wife and the other signed by Price and wife with a provision for MVS to execute as mortgagor with Price. MVS did not sign the chattel mortgage, nor were they required to by the terms of the "April 30th Agreement". Thereafter, Industries, through their attorney, prepared a subordination agreement for MVS to sign along with the Prices. However, it was not signed by MVS.

A series of negotiations took place between Industries and MVS concerning the chattel mortgage. Attorney Carroll, representing MVS, in a letter dated January 6, 1959, to Roberts, Vice President of Industries, stated that the furnishings were the absolute property of MVS. However, the letter went on to say that MVS recognizes that some or all of such furnishings *may* be subject to the lien of a first mortgage on the property in which the furnishings were installed. However, the letter stated that "the agreement (April 30th Agreement) is designed so that it does not purport to abrogate any rights which such a first mortgage may have to the security represented by such furniture and equipment." The letter went on to recite the terms of the "April 30th Agreement." Industries wrote the attorney for MVS requesting MVS to send Industries a copy of what they would be willing to sign, recognizing that the furnishings were to be subject to the first mortgage held by Industries. Industries

stated: "We consider it essential that we have some warranty from you that our interest in these properties is a first and prior mortgage." The copy of this letter introduced into evidence by appellant had the date of January 16, 1959. However, the original letter was later introduced in evidence by appellee, and it showed that it was dated January 20th, 1959, instead of January 16th. On January 18, 1959, two days before the original letter was dated, Industries assigned and transferred to Nelico all its right and interest in and to the chattel mortgage signed by Price and wife as mortgagors. On January 24, 1959, the attorney for MVS wrote Roberts, Vice President of Industries, to the effect that MVS's agreement with Motel Corp. did not obligate MVS to prepare any additional papers or yield any security rights in the furnishings. The letter further states: "However, my letter of January 6 describes the extent to which Master Video's interest in the furniture in Paradise Isle (Motel Corp.) is or may be subordinated, and you are therefore in a position to prepare and submit to us for our consideration whatever papers you feel may be necessary and appropriate." The jury found that the attorney for MVS admitted that Nelico had a right to a mortgage on the furnishings by virtue of the "April 30th Agreement"; however, nothing further was submitted by Industries or Nelico to MVS for their consideration or signature, nor did Industries obtain, or attempt to obtain, a written chattel mortgage from Motel Corp. on the furnishings, to them or to Nelico.

Nelico assigns six points of error complaining (1) that the trial court erred in rendering judgment for MVS because Nelico had a superior lien on all furnishings based upon its written chattel mortgage; (2) that Nelico had a superior equitable mortgage on all the furnishings and that MVS was estopped from claiming that its rights were superior; (3) that Nelico's claim was based on chattel mortgages taken with notice of a superior lien in Nelico

on all furnishings; (4) that Nelico on its counter claim, was entitled to the value of the television equipment; (5) the trial court erred in submitting special issues as to waiver of Nelico or Industries' requirement of a first mortgage on the furnishings, and (6) that the court erred in overruling Nelico's objections to the deposition testimony of Price because such questions were leading and suggestive and called for legal conclusions and the testimony was in violation of the parol evidence rule.

■ On November 4th, the sale, purchase and lease of the furnishings between Motel Corp. and MVS was consummated. No written chattel mortgage to anyone was in existence at that time. The only documentary evidence of a mortgage was Price's contract of March 25th with Industries, wherein he agreed to give Industries a mortgage. Neither of the parties to this law suit were parties to that agreement. The jury found that MVS did not have notice before signing the contracts of April 30th that Nelico was to have a first mortgage on the furnishings. Roberts, Executive Vice President of Industries, testified that to his knowledge MVS did not have any knowledge of Industries' agreement with Price at the time they furnished the motel. Price confirmed this, stating that he did not recall ever delivering a copy of the "March 25th Agreement" to MVS. We hold there was ample evidence to support such finding. The March 25th Agreement itself cannot be construed as a mortgage of the furnishings from Motel Corp. to Nelico, because neither Motel Corp. nor MVS were parties to the agreement between Price and Industries. See 13 Tex. Jur.2d, Contracts, § 9, p. 122 and cases cited therein.

MVS agreed to accept title (on November 4th) to the furnishings, subject to a mortgage (if one existed) or subject to an agreement by Motel Corp. to mortgage the furnishings to Nelico. However, it is clear to us from the evidence in the

record that no mortgage existed on the furnishings from Motel Corp. to Nelico.

■ Nelico says that a contract giving a lien on chattels is a chattel mortgage, citing Leonard v. Burton, 11 S.W.2d 668 (Tex.Civ.App.1928) and Shwiff v. Dallas, 327 S.W.2d 598 (Tex.Civ.App.1959, n. r. e.), and that a valid chattel mortgage may be created on property to be acquired in the future as contemplated by the agreement of March 25th, citing Richardson v. State of Washington, 88 Tex. 339, 31 S.W. 614 (1895) and Texas Farm Products Company v. Burrus Feed Mills, Inc., 337 S.W.2d 203 (Tex.Civ.App.1960, n. r. e.). As between the parties to the contract this might be true. In this case, however, the chattel mortgage and the contract to give a mortgage, relied on by Nelico, was executed by Price and wife (chattel mortgage) and by Price individually (the contract) to Industries. Industries assigned the chattel mortgage to Nelico. Neither Motel Corp. nor MVS were parties to the chattel mortgage or the contract.

Nelico argues that the furnishings were conveyed to Motel Corp. subject to the lien in Nelico relying on the April 30th Agreement and the notice of November 4th. Nelico says that those instruments conveyed the furnishings to MVS subject to or with prior notice of Nelico's lien, which in effect made MVS a junior lienholder. Of course, this position is without merit because Nelico had not come into existence as far as the security transaction is concerned, and they did not do so until some two weeks later (November 18, 1958). It is undisputed that there was no agreement, contract or mortgage between MVS and Nelico. The jury found that the provisions concerning Nelico in the "April 30th Agreement" were not inserted for Nelico's benefit.

■ Nelico then argues that on November 18th when the security transaction was closed, Price executed the deed of trust, note and chattel mortgage to carry out his agreement of March 25th. Nelico contends that Price exhibited the April 30th Agreement to Industries as evidence that Nelico would have a first mortgage on the furnishings. Nelico argues that since Price was President of the Motel Corp. and general manager, he had the power to execute the chattel mortgage instrument on behalf of the Motel Corp. and that Price just dealt for the corporation for convenience as his "alter ego". However, the facts are undisputed that no chattel mortgage was ever executed by Motel Corp. to Industries or Nelico. In fact, Nelico argues in its brief that they did not believe that such a chattel mortgage was necessary. This failure to obtain a written chattel mortgage from Motel Corp. in favor of Industries or Nelico prevented Nelico from having any rights to the furnishings superior to MVS. MVS only agreed that such furnishings would be subject to a mortgage in Nelico from Motel Corp. or a right to a mortgage from Motel Corp. to Nelico. This never did take place.

██ The written mortgage which Nelico relies upon was signed by Price and his wife as individuals; the wife separate and apart from her husband. This does not indicate to us that Price was executing such instrument on behalf of the corporation. A corporation acts as an entity with a personality distinct from other persons who compose it. 14 Tex.Jur.2d § 10. There were no pleadings, issues or jury findings to support the theory of Nelico that the corporate veil had been pierced. As stated in Wells v. Hiskett, Tex.Civ.App., 288 S.W. 2d 257, n. r. e.: " * * * A corporate entity may not be disregarded simply because it stands as a bar to a litigant's recovery * * *." Price never at any time received title to the furnishings. Motel Corp. never gave a mortgage to Industries or Nelico. MVS agreed that its furnishings at the time title passed would be subject to a mortgage which never was accomplished. Nelico argues that Price warranted to Industries that he had the right to give a mortgage on the furnishings. It may

be that Nelico has a good cause of action against Industries and/or Price but Nelico was not in privity with either Motel Corp. or MVS.

■ Nelico takes the position that Industries under its agreement of March 25th held an equitable mortgage on all furnishings that were to be placed in the motel and that MVS was estopped from claiming that its rights were superior. MVS testified that their contracts were for the most part, form contracts, because at times the primary lender required a subordination of the ownership rights in the furnishings to the primary lender. In anticipation of this situation MVS created a power in Motel Corp. whereby Motel Corp. could mortgage MVS's interest in the furnishings and if Motel Corp. had created a mortgage at the time title passed, MVS's interest would have been subject to such mortgage. MVS's attorney testified to the effect that the agreement was drawn so that if the first mortgage holder should have to foreclose on the motel property they would be in a position to operate with the furnishings and at the same time MVS's rights would be protected. Stating it another way, the President of MVS stated that "we permitted the life insurance company to have the comfort that we weren't going to yank this furniture out if something went wrong." Industries' Vice President testified that the first time they knew that MVS was involved was just a few days prior to the installation. He freely admitted that although he knew that MVS was going to furnish the motel, Industries never, to his knowledge, furnished MVS with any documents which gave notice of Industries' agreement with Price. The evidence shows that MVS was willing to live up to its original agreement of April 30th, but that it did not want to enlarge or change the agreement that it had with Motel Corp. The cases cited by Nelico all concern situations in which an agreement, usually oral, was entered into between the parties, so that a party to a contract will not be permitted to take a position inconsistent with the provisions of the agreement to the prejudice of another. The fallacy of Nelico's contention is that Nelico and MVS were never parties to any contract to give a mortgage, and MVS has never taken any position inconsistent with the agreements to which it was a party. In fact Nelico and Motel Corp. were never parties to any agreement. The jury properly concluded that all that Nelico was to have under the agreement was a "right to mortgage." This right would have to be matured in conformity with the "April 30th Agreement" by which Motel Corp. would have had to execute a mortgage on the furnishings to Industries or Nelico. There was no such mortgage nor was there any evidence that either Industries or Nelico attempted to secure such a mortgage.

Nelico's position that MVS's claim is barred by the doctrine of estoppel does not apply where the transaction necessary to give Nelico its rights was never consummated. Coleman v. Kettering, Tex.Civ. App., 289 S.W.2d 953; 22 Tex.Jur.2d, Estoppel, § 3, page 662. Appellant's first three points are overruled.

The jury found that Nelico and Industries by their conduct waived the requirement of a first mortgage on all furnishings. The trial court properly used the definition of waiver in the Supreme Court case of Ford v. Culbertson, 158 Tex. 124,.308 S.W. 2d 855.

■ Nelico and Industries had offices in Fort Worth and all legal work on the transaction was handled by their attorney, Mr. Cook. Industries built the motel for an agreed cost of $350,000.00. Price owned the 7.8 acre tract at Port Aransas and executed the note individually. He further agreed to create a corporation, pledge over $80,000.00 of his properties to Motel Corp. and then pledge these same assets of Motel Corp. to Industries. Roberts of Industries knew that MVS installed the furnishings on November 4th, 1958. Price showed Roberts the

agreement between Motel Corp. and MVS and attorney Cook had ample opportunity to examine the "April 30th Agreement" prior to the closing on November 18, 1958. The evidence shows that Nelico had full knowledge of all of the material facts. Industries knew that the contract for the furnishings was between MVS and Motel Corp. The evidence shows that Industries and Nelico did quite well financially and had adequate security, at least $430,000.00 for a $350,000.00 motel. Roberts, acting for Industries testified that he saw the "April 30th Agreement", but he never testified that he requested Price to obtain any letters that would require MVS to subordinate their interest to Nelico. There was ample time between the completion of the motel and the closing of the real estate transaction to have permitted Industries and/or Nelico to have obtained a proper mortgage from Motel Corp. to them, or to have required MVS to execute a chattel mortgage or subordination agreement prior to the final closing of the transaction. Industries and/or Nelico, if they really wanted a chattel mortgage from Motel Corp., could have refused to have delivered possession of the premises, until they were sure that all the necessary legal documents were executed to their satisfaction. Motel Corp. agreed with Industries in the "March 25th Agreement" to pledge all its assets and to execute all necessary instruments to accomplish this result. Motel Corp. could have given a chattel mortgage at any time, but there was no evidence that Industries requested Motel Corp. to do this. Later Nelico recognized MVS's security interest in the furnishings. The attorney for Nelico and Industries testified to the effect that when Price was as much as $15,000.00 behind in his installments to Nelico, Price would call and say, "I have $5,000.00. Shall I send you all the five, or Master Video's people are pushing me so hard, may I send them a little?" Attorney Cook stated that his client Nelico would say to him: "O.K. Let Master Video have some of the money. Go ahead and send us half of the money." If Nelico thought that they had a first and superior mortgage on the furnishings, we do not believe that Nelico would have split the $5,000.00 with MVS, when their mortgage was three and a half times greater than MVS. Even after the loan had been closed and the chattel mortgage had on January 18th been assigned to Nelico there was no evidence that Nelico attempted to secure any additional instruments from either Motel Corp. or MVS. We believe and so hold that there was ample evidence that Nelico waived its right or requirement to a chattel mortgage on the furnishings from Motel Corp. Nelico recognized the superior right of MVS, and from the evidence had decided against their original desire for a first mortgage on the furnishings. The provisions of the "April 30th Agreement" as the jury so found were not inserted in the "April 30th Agreement" for the benefit of Nelico as far as MVS was concerned. Appellant's fifth point is overruled.

■ After the default in November of 1960, and prior to the foreclosure by Nelico in March of 1961, Price and Motel Corp. resisted the foreclosure, first, by filing suit in state district court for an injunction against Nelico and second, by suit filed in Federal District Court for an arrangement proceedings to provide for a restraining order against Nelico and its substitute trustee. The state court suit was dismissed. The Federal Court's interlocutory order provided for additional time to permit Price to try and find a buyer for the motel property. This order provided that after thirty days, and if at that time no sale had been consummated Price and Motel Corp. were to surrender possession of the realty and furnishings to Nelico. Nelico argues that this Federal court order perfected title in Nelico. Appellant's point is overruled. MVS was not a party to the suit. The order was interlocutory in nature and of course the court could not determine MVS's interest in the property without them being a party. Pennoyer v. Neff, 95 U.S. 714, 24

L.Ed. 565; Smith v. Stark Trucking, Inc., D.C., 53 F.Supp. 826.

Nelico did not seek a mortgage in Federal Court from Motel Corp. on the furnishngs, and none was given to Nelico. Nelico did not rely on this court order to perfect its lien on the furnishings and there is no evidence that any acquittance was given by Motel Corp, to Nelico. Nelico did not file suit to foreclose on any mortgage, but Nelico proceeded and did foreclose by private sale, under the terms of the written chattel mortgage given by Price to Industries which was subsequently assigned to Nelico. This Federal Court order, in effect placed the furnishings in the hands of Nelico subject to the interest of MVS.

Nelico's attorney, in drawing up the chattel mortgage on November 18th, failed to list the television and related equipment in the schedule of equipment attached to the chattel mortgage. Just prior to the foreclosure MVS made demand on Nelico for the return of all the furnishings including the television and related equipment. In compliance with the demand, tender of the television sets was made by Nelico without waiving any priority of the claim of Nelico to the television and related equipment. Nelico complains that the trial court erred in failing to render judgment for Nelico on its counter claim for the value of the television equipment. In view of our holding herein that Nelico had no mortgage on the furnishings, including the television equipment, its point of error number four is overruled.

Price's deposition was taken prior to the time of trial by both Nelico and MVS. During the trial, attorneys for MVS and Nelico each offered portions of Price's deposition in evidence. Both attorneys objected on the grounds that the depositions were leading and suggestive and called for legal conclusions and because some of the testimony violated the parol evidence rule. The trial court overruled all objections of both parties to the offered testimony of Price.

Nelico in its sixth point complains of the trial court's ruling on the portion of the testimony of Price that was offered by MVS. The deposition itself is not in the record before us and all objections to the testimony were made as to page and line from Price's deposition. There is no correlating page and line numbers in the statement of facts as to the testimony and it is impossible for use to determine as to which particular question was objectionable. At one stage in the proceedings appellant's attorney reminded the court that each of the opposing party's attorneys objected to a part of the deposition of Price as leading and suggestive and reminded the court that the court had held it was not. Then Nelico's attorney admitted that it was a proper ruling. Appellant has set forth the evidence complained of and we fail to find that any of such evidence affects any of the defenses urged by appellant Nelico. Some of the objections came too late. Some were overruled which came within the province of the trial court's discretion, and none of the evidence admitted, has been demonstrated to us as being prejudicial which caused or probably caused the rendition of an improper verdict. Rule 434, T.R.C.P., Appellant's point number six is overruled.

Appellee MVS has filed several cross-points complaining of the trial court in failing to grant judgment for MVS in the amount of $26,538.80 which the jury found was the value of the furnishings. The trial court, in response to a jury finding, deducted $5,823.00 as being the value of the furnishings that were attached to the building of the motel on the date of the foreclosure. In addition the trial court reduced plaintiff's recovery by an additional $4,082.62, representing the amount paid by Nelico to the taxing agencies as taxes on the furnishings to prevent foreclosure of tax liens by the taxing agencies.

There was evidence from several expert witnesses that the air conditioning units installed in holes in the wall, carpet which was installed on the concrete floor, and

**368**

certain kitchen and back bar equipment which was bolted to the walls and which passed through the roof of the motel, were fixtures attached to the realty. The jury found from the testimony that the value of such items was $5,823.00. There was no evidence to the contrary, nor was it in dispute that these items were furnishings that were attached to the realty. See 25 Tex. Jur.2d Fixtures, § 20, p. 416.

The trial court found as a fact that by an agreement of the parties, that $4,082.62 was paid by Nelico to prevent the foreclosure of tax liens on the motel furnishings. The certificate of taxes clearly shows that the amount paid by Nelico was for taxes owed prior to the foreclosure. Nelico purchased the furnishings at the chattel mortgage sale and paid the back taxes to protect its interest in the property. As stated in the case of McDermott v. Steck Co., 138 S.W.2d 1106, writ dism.:

> "* * * where a purchaser buys land and takes a deed thereto, and subsequently pays a prior lien on the property which he is not primarily bound to pay, but which if not paid might cause him to lose his interest therein, he is subrogated to the rights and remedies of such prior lien, as against a lien which is superior to his title."

There is no question that the taxes on the furnishings would have had to be paid by the legal or equitable owner of the furnishings to protect its interest. The trial court was correct in holding that Nelico was subrogated to the rights held by the taxing authorities under the tax lien when it paid the taxes due, prior to the foreclosure sale. Appellant's cross-points of error are overruled.

The judgment of the trial court is affirmed.

SHARPE, Justice.

I concur in the result.